## Case No. 11,932.

### Ex parte ROBINSON.

[4 Fish. Pat. Cas. 186; 2 Biss. 309; 4 West. Jur. 252; 2 Chi. Leg. News, 297; 3 Am. Law T. Rep. U. S. Cts. 112; 5 Am. Law Rev. 169.] [1]

Circuit Court, D. Indiana. June Term, 1870.

CONSTITUTIONAL LAW—PATENT RIGHTS—PROPERTY IN INVENTIONS—INDIANA STATUTE.

1. The law of Indiana regulating the sale of patent rights within that state is unconstitutional and void.

> [Cited in Woollen v. Banker, Case No. 18,030; Castle v. Hutchinson, 25 Fed. 394.]

> [Disapproved in Brechbill v. Randall, 102 Ind. 530, 1 N. E. 362. Cited in Grover v. Butler. 53 Ind. 459. Disapproved in New v. Walker, 108 Ind. 365, 9 N. E. 386.]

2. Property in inventions exists by virtue of the laws of congress, and no state has a right to interfere with its enjoyment, or to annex conditions to the grant. If the patentee complies with the law of congress, he has a right to go into the open market anywhere within the United States and sell his property.

> [Cited in Re Sheffield, 64 Fed. 836.]

> [Cited in Crittenden v. White, 23 Minn. 25. Questioned in Fry v. State. 63 Ind. 565; Herdic v. Roessler, 109 N. Y. 131. 132, 16 N. E. 198. Cited in Hollida v. Hunt, 70 Ill. 113. Distinguished in Tod v. Wick, 36 Ohio St. 387. Cited in Wilch v. Phelps, 14 Neb. 137, 15 N. W. 361.]

This was a petition for a writ of habeas corpus, heard before Mr. Justice DAVIS, Circuit Justice.

In April, 1869, the legislature of Indiana passed the following act [St. Ind. (Davis' Supp.) p. 364], entitled "An act to regulate the sale of patent rights and to prevent frauds in connection therewith":

"Section 1. Be it enacted by the general assembly of the state of Indiana, that it shall be unlawful for any person or persons to sell or barter or offer to sell or barter any patent right, or any right which such person shall allege to be a patent right, in any county within this state, without filing with the clerk of the court of such county, copies of the letters patent duly authenticated, and at the same time swearing or affirming to an affidavit before such clerk that such letters patent are genuine, and have not been revoked or annulled, and that he has full authority to sell or barter the rights so patented; which affidavit shall also set forth his name, age, occupation, and residence, and if an agent, the name, occupation, and residence of his principal. A copy of this affidavit shall be filed in the office of said clerk, and said clerk shall give a copy of said affidavit to the applicant, who shall exhibit the same to any person on demand.

"Sec. 2. Any person who may take any obligation in writing, for which any patent right, or right claimed by him or her to be a patent right, shall form the whole or any part of the consideration, shall, before it is signed by the maker or makers, insert in the body of said written obligation above the signature of said maker or makers, in legible writing or print, the words 'Given for a patent right.'

"Sec. 3. Any person who shall sell or barter or offer to sell or barter within this state, or shall take any obligation or promise in writing, for a patent right, or for what he may call a patent right, without complying with the requirements of this act, or shall refuse to exhibit the certificate when demanded, shall be deemed guilty of a misdemeanor; and on conviction thereof before any court of competent jurisdiction, shall be fined in any sum not exceeding one thousand dollars, or be imprisoned in the jail of the proper county not more than six months, at the discretion of the court or jury trying the same; and shall be liable to the party injured, in a civil action, for any damages sustained."

By virtue of this act, the petitioner [Major J. Robinson] had been arrested and committed, under circumstances which are set forth in the opinion of the court.

Goodwin, Larned & Towle, for petitioner.

[2] [The statute of Indiana is entirely extrajurisdictional, unconstitutional and void as applied to a patent right granted in pursuance of the laws of congress passed by virtue of the 8th section of article 1 of the constitution of the United States, in which power is given to congress "to promote the progress of science and useful arts, by securing, for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries." The supreme court of the United States have held, in McClurg v. Kingsland, 1 How. [42 U. S.] 206, and Blanchard v. Sprague [Case No. 1,518], that the power of congress to legislate, under this article of the constitution, upon the subject of patents, is plenary. The power has been acted on in a series of laws, from 1790 to this time, which have established an entire system for securing to inventors their discoveries. The patent issued in accordance with the act of 1836 (5 Stat. 117) grants to the applicant, his heirs, administrators, executors, or assigns, for a term not exceeding fourteen years, the full and exclusive right and liberty of making, using and vending to others to be used, the said invention or discovery. Section 11 of said act is "that every patent shall be assignable in law, either as to the whole interest or any undivided part thereof, by any instrument in writing; which assignment, and also every grant and conveyance of the exclusive right, under any patent, to make and use,

[1] [Reported by Samuel S. Fisher, Esq., and by Josiah H. Bissell, Esq., and here compiled and reprinted by permission. The syllabus, statement, and opinion are from 4 Fish. Pat. Cas. 186, and the brief of counsel is from 2 Biss. 309.]

[2] [From 2 Biss. 309.]

and to grant to others to make and use, the thing patented, within and throughout any specified part or portion of the United States, shall be recorded in the patent office within three months from the execution thereof." Section 14. "Damages may be recovered by action on the case, in any court of competent jurisdiction, to be brought in the name of the persons interested, whether as patentees, assignees, or as grantees of the exclusive right within and throughout a specified part of the United States." Section 17 makes all such suits at law or in equity originally cognizable in the United States circuit court, and such jurisdiction is exclusive. Dudley v. Mayhew, 3 Comst. [3 N. Y.] 14; Elmer v. Pennel, 40 Me. 434; Brown v. Shannon, 20 How. [61 U. S.] 56. .

[It has been definitely settled in the United States courts that this exclusive right is property of a peculiar character; it is created and controlled by the statute; the patentee is regarded as purchasing from the public. Curt. Pat. (3d Ed.) § 167; Potter v. Muller [Case No. 11,334]; Morton v. Eye Infirmary [Id. 9,865]; Wintermute v. Redington [Id. 17,896]. The courts will protect the patentee in the exercise of his exclusive privileges. Ransom v. New York [Id. 11,573]. It is also held that the patentee has, under his patent, three distinct rights, which he may dispose of separately to different individuals, to-wit: The right to make the machine; the right to use it; and the right to vend it; and also the right to divide his monopoly in the category of its locality, and thus create any number of exclusive franchises, each bounded by the limits of a city, county or state. Jenkins v. Greenwald [Id. 7,270]; Burr v. Duryee [Id. 2,190].

[The paramount authority of the laws of the United States under article 6 of the constitution has been vindicated from the leading case of McCulloch v. Maryland, 4 Wheat. [17 U. S.] 316, down to Crandall v. Nevada, 6 Wall. [73 U. S.] 35. See, also, Gibbons v. Ogden, 9 Wheat. [22 U. S.] 186, 239; Prigg v. Pennsylvania, 16 Pet. [41 U. S.] 573; The Passenger Cases, Smith v. Turner, and Norris v. City of Boston, 7 How. [48 U. S.] 283, 392, 464; Sinnot v. Davenport, 22 How. [63 U. S.] 227; Bank of Commerce v. New York City, 2 Black [67 U. S.] 620; Brown v. Maryland, 12 Wheat. [25 U. S.] 419; Steamship Co. v. Port-Wardens, 6 Wall. [73 U. S.] 31; Robinson v. Rice, 3 Mich. 235; Houston v. Moore, 5 Wheat. [18 U. S.] 1. This law impairs the obligation of contracts. In Whitney v. Emmett [Case No. 17,585] the court said: "A patent is a bargain with the public in which the same rules of good faith prevail as in other contracts. * * * If a patent is valid, it gives to the patentee a right of property in the thing patented, which is entitled to full protection in the courts." See also Page v. Ferry [Id. 10,662] and Kendall v. Winsor, 21 How. [62 U. S.] 328.

[A grant or private charter is a contract. Dartmouth College v. Woodward, 4 Wheat. [17 U. S.] 518, 656. See cases collated in Pasch. Const. pp. 155-158, and 2 Pars. Cont. pp. 509-516, and notes. This law interferes with the jurisdiction of the United States courts, established by congress. The jurisdiction given by the constitution and the laws of congress is exclusive. The judicial power of the United States is vested in one supreme court and in such inferior courts as the congress may from time to time ordain and establish. Const. art. 3, § 1. The judicial power shall extend to all cases in law and equity arising under this constitution and laws of the United States, etc. Const. art. 3, § 2.

[By section 17 of the patent act of 1836, cases arising under any law of the United States concerning patent rights and inventions are originally cognizable in the courts of the United States. Under this section the courts have plenary power to hear and determine all questions of infringement and compensation. Nevins v. Johnson [Case No. 10,136]; Goodyear v. Providence Rubber Co. [Id. 5,583]. The jurisdiction thus given, this state law attempts to qualify, limit and control. It undertakes to say that this court shall not take jurisdiction of the complainant's rights as secured to him by the laws of the United States, but only by the permission of the legislature of Indiana, under the law of that state. It limits that jurisdiction to cases where the patentee has complied with all the formalities prescribed by the law of that state.

[In the recent case of Payne v. Hook, 7 Wall. [74 U. S.] 425, the present supreme court held that, the equity jurisdiction and remedies conferred by the constitution and statutes of the United States cannot be limited or restrained by state legislation, and are uniform throughout the different states of the Union. And see Fifield v. Close, 15 Mich. 505; Jones v. Estate of Keep, 19 Wis. 369; Warren v. Paul, 22 Ind. 276; The Moses Taylor, 4 Wall. [71 U. S.] 411.] [2]

DAVIS, Circuit Justice. It appears, from the papers in this case, that the petitioner, being the duly authorized agent of the owners of certain patents granted to Henry B. Goodyear, administrator, and to John A. Cummings, offered, on May 23, 1870, to sell to Harrison H. La Fever, a dentist in the county of Grant, in this state, the right to use the invention patented for dental purposes, within said county, for the sum of one hundred dollars, which the said La Fever agreed to pay. Before the sale was completed, the district attorney of the county instituted proceedings against the petitioner under the provisions of an act of the legislature of Indiana, entitled "An act to regulate the sale of patent rights, and to prevent

[2] [From 2 Biss. 309.]

frauds in connection therewith," which took effect April, 1869.

These proceedings resulted in the petitioner being committed to the jail of the county, because he had failed, before he had offered to sell the patent right, to comply with the terms of the law. If the law was valid, he was properly held in custody; otherwise he should have been discharged. This law declares that it shall be unlawful for any person to sell or barter, or offer to sell or barter, any patent right in any county in the state, without first filing with the clerk of said county copies of the letters patent, duly authenticated, and at the same time swearing to an affidavit before such clerk that such letters patent are genuine and have not been revoked or annulled, and that he has full authority to sell or barter the right so patented, which affidavit shall set forth his name, occupation, and residence, and, if an agent, the name, occupation, and residence of his principal. A copy of this affidavit shall be filed in the office of said clerk, who shall furnish a copy of the same to the applicant, who shall exhibit the same to any person on demand. Penalties are imposed for any violation of these provisions.

This is an attempt on the part of the legislature to direct the manner in which patent rights shall be sold in the state; to prohibit their sale altogether if these directions are not complied with, and to throw burdens on the owners of this species of property, which congress has not seen fit to impose upon them. I have not time to elaborate the subject, nor even to cite the authorities bearing on the question, and shall, therefore, content myself with stating the conclusion which I have reached.

It is clear that this kind of legislation is unauthorized. To congress is given, by the constitution, the power "to promote the progress of science and the useful arts by securing, for limited times, to authors and inventors, the exclusive rights to their respective writings and discoveries." This power has been exercised by congress, who have directed the manner in which patents shall be obtained, and when obtained how they shall be assigned and sold.

The property in inventions exists by virtue of the laws of congress, and no state has a right to interfere with its enjoyment, or to annex conditions to the grant. If the patentee complies with the law of congress on the subject, he has a right to go into the open market anywhere within the United States and sell his property. If this were not so, it is easy to see that a state could impose terms which would result in a prohibition of the sale of this species of property within its borders, and in this way nullify the laws of congress, which regulate its transfer, and destroy the power conferred upon congress by the constitution. The law in question attempts to punish, by fine and imprisonment, a patentee for doing, with his property, what the national legislature has authorized him to do, and is therefore void. The petitioner is discharged.

[For other cases involving this patent, see note to Warner v. Goodyear, Case No. 17,183.]